McCOLLUM et al. v. McMANUS et al. (No. 8446.)

(Court of Civil Appeals of Texas. Dallas. May 15, 1920.)

Injunction ⊕⇒118(1)—Petition to enjoin inspectors from dipping cattle good as against demurrer.

A petition of cattle owners to enjoin live stock inspectors from requiring the dipping of cattle, alleging that plaintiff's stock would be seriously crippled and bruised, and that there would be a total or partial loss of milk or butter as to milch cows, held good as against demurrer.

Appeal from District Court, Henderson County; John S. Prince, Judge.

Suit by W. D. McCollum and others against C. W. McManus and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

W. L. Faulk and Miller & Miller, all of Athens, for appellants.

RAINEY, C. J. W. D. McCollum and about 175 others, as plaintiffs, brought this suit against certain parties, live stock inspectors for Henderson county, and alleged, in substance, as follows:

"That the plaintiffs reside in Henderson county, Tex., and that the defendants reside in Henderson county, Tex.

"For cause of action plaintiffs show to the court that they are the owners and caretakers of cattle, horses, and mules, located on their respective premises in said Henderson county, Tex. That they have been the owners of said stock for a long time, and are now the owners of said live stock, consisting of cattle, horses, and mules, as aforesaid, and they are being kept by the plaintiffs on their respective premises in Henderson county, as aforesaid.

"That the defendants purport to be and are pretending to act as official live stock inspectors in and for Henderson county, Tex., and are being paid a salary as such pretended inspectors by the commissioners' court of said county, except the defendant McManus, who is receiving his pay from the state government, the amount being $185 per month, said inspectors, receiving for their services $85 per month from the commissioners' court of Henderson county, Tex. That each inspector receives $85 per month as aforesaid.

"That the defendants are claiming the right,

power, and authority as inspectors to compel plaintiffs and all others, citizens of Henderson county, who own or have such live stock under their control, to dip said live stock in certain vats constructed by defendants and the county authorities of Henderson county, Tex., in June, July, August, and September, 1919, and located at various points in said county, and that after the constructions of the vats the defendants filled them with a mixture of fluid, chemicals, and poison, and began calling upon and demanding that plaintiffs and all other citizens owning or controlling live stock in Henderson county, Tex., should immediately drive their stock to the vats and dip them into said mixture and poison, and threaten and stated that all who did not comply with said demand would be arrested, prosecuted, and fined for their failure or refusal so to do. That the vats are about 18 or 20 feet in length and from 3 to 5 feet wide, and constructed in excavation about 7 or 8 feet below the surface of the earth, with a narrow chute leading to one end of the vats, and through which chute the defendants compelled, and are still attempting to compel, plaintiffs and other citizens to drive their stock, and to cause them to jump or fall a distance of several feet into the vat with great force and violence.

"That on the account of the character, quality, and quantity of the fluids, chemicals, and poison placed and maintained in the vat by the defendants, and the manner employed by defendants in forcibly compelling plaintiffs and other citizens to drive their live stock into the vats, great damage has already been inflicted on plaintiffs and other citizens, and that unless the unauthorized and unlawful conduct of defendants is restrained by the court said defendants will continue to employ said means and methods in the future as they have in the past, and will continue in their demands to forcibly compel plaintiffs and other citizens to drive their stock into said vats, and that unless restrained the defendants will thus cause the plaintiffs and said other citizens to suffer irreparable injury. That the dipping of said stock was without their consent and contrary to their wishes, and was caused by the demands, notification, and threats of defendants.

"That the live stock so dipped were bruised, skinned, crippled, and injured because of the manner of the construction of said vats and chutes, and on account of forcing the animals to jump or fall into the same, and because of the quality and quantity of said liquid and poison in the vats.

"That the defendants so conducted said operation and work as to cause said live stock to swallow and inhale said poison, causing them to be almost strangled to death and rendering them weak, stiff, and sick; numerous cattle of plaintiffs and other citizens being thereby crippled and injured and some killed. The numerous and valuable milch cows were thereby crippled and killed.

"That many of said cows were so injured and poisoned they dried up in their milk to one-half of the quantity they had theretofore been giving, causing their bags and teats to be injured, in some instances causing the milk of the cows to be unnatural and bloodshot, wholly unfitting it for family use, also decreasing the amount of butter realized by plaintiffs in proportion to the decrease in milk. That plaintiffs were depending on their milch cows for all the milk and butter necessary for their family, and that the damage they have suffered in this particular is serious. That defendants not only brought about the dipping, but stated that they would accept no reason or excuse for a failure to comply with their demands.

"Plaintiffs further show to the court that said live stock were healthy at the time of the forcible dipping, and did not have splenatic fever, and did not have any other malignant, contagious, infectious, or communicable disease whatever, and were not affected with any agency or condition for the transmission of splenatic fever, and did not have upon them any fever-producing ticks, and had not been exposed to said condition, all of which was well known to defendants, or could have been known to them had they used proper diligence. That before the defendants called dipping and injuries they had never inspected said stock, and had not found said live stock with splenatic fever or fever-producing ticks, but nevertheless they insisted and persistently demanded that plaintiff and other citizens should drive their live stock into said vats of liquids and poison, and threatened that all who refuse or fail to do so would be reported by them to the constable or sheriff, and that the defendant and said officer would enter the premises of those who disobeyed, and then forcibly take and drive their live stock away from the control from such owners and then force such stock into said vats. Plaintiffs further show to the court that they are now being prosecuted in the county court of Henderson county, Tex., and being harassed in every way possible by the said defendants.

"Plaintiffs further show to the court that the defendants claim and contend that the plaintiffs are amenable to the law, and are entitled to be prosecuted in the criminal court for failure to dip their live stock, even though they are free from disease and free from ticks.

"Plaintiffs further show to the court that the defendants do not claim that said live stock had splenatic fever, or that they had made an inspection or had found fever-producing ticks upon said cattle, but claimed and asserted that they had the power and authority to compel the dipping of cattle, horses, and mules in Henderson county, Tex., even though said live stock were in a perfectly healthy condition.

"Plaintiffs further show to the court that they protested against the conduct of the defendants, and requested them to inspect the live stock of plaintiffs before requiring them to be dipped. But that defendants arbitrarily refused to comply with such reasonable request, and failed and refused to examine or make any inspection whatever, but proceeded to carry out the forcible dipping of live stock, although not a condition existed in law or fact that warranted forcible dipping. That the stock of some of the plaintiffs had been dipped once, and the stock of other plaintiffs had been dipped several times; and that defendants are demanding that all of said stock be dipped again, and as often in the future as defendants shall demand, and at least every two weeks; and that defendants have threatened that they in connection with the sheriff or constable will forcibly dip the stock or they will prosecute them in the criminal court who refuse to comply

with said demands; and that unless restrained by the court the defendants will execute said threat, and that the defendants are now causing the plaintiffs to be arrested and prosecuted in the courts; and that in carrying out said forcible dipping they will cause the live stock of the plaintiffs and others to be injured, poisoned, crippled, and killed, to the great damage of the owners.

"Plaintiffs further show to the court that at least 1,000 head of cattle, horses, and mules (principally cattle) have been damaged by said dipping in Henderson county. That the defendants are notifying plaintiffs and other citizens that all of their cattle, horses, and mules must be dipped in said vat, although said live stock are not affected with any disease or character whatever; that defendants have made no inspection of said animals, and if the demands and threats of defendants are carried out plaintiffs and each of them will suffer thousands of dollars of damage on account of the fact that their horses, cattle, mules, etc., will be injured, crippled, poisoned, and damaged. That the said defendants have caused an expense to Henderson county taxpayers a sum of money which amounts to more than $10,000 since the 1st of June, 1919.

"Plaintiffs further show to the court that the said trespasses and wrongs were without authority of law, and that any statute attempting to authorize such invasion of personal rights would violate the Constitution of the state.

"Plaintiffs further show to the court that two elections, or at least one, has been had in Henderson county, Tex., to determine whether live stock should be dipped, and said election or elections resulted against the enforcement of such a law in Henderson county. That by some sort of order passed by the commissioners' court of Henderson county, Tex., or some other body, said tick law has been put in operation in Henderson county, Tex., or rather a pretended operation of said cause has been put in operation in said Henderson county, Tex.

"Plaintiffs further show to the court that the defendants have no right to disturb these plaintiffs. That the defendants are now demanding and insisting that plaintiffs and other citizens should submit their live stock to the dipping process again, and at frequent intervals in the future, and threatening that, if said demands are not complied with, all who refuse obedience will be arrested, prosecuted, and fined.

"Plaintiffs further show to the court that the expense account will bankrupt the taxpayers of Henderson county, Tex., if the defendants are permitted to destroy the property of the plaintiffs and to continue to spend the funds of Henderson county as they have heretofore done.

"Plaintiffs further show to the court that the voters of Henderson county voted twice, or at least one time, on the question of whether or not the county should adopt the provisions connected with the dipping law, that at each of said elections, and at least at the last election, said voters refused to adopt or to bring Henderson county within the terms of the statute governing the eradication of ticks. That in the face of the action of the voters the said law destroyed local self-government in this: It permits the law to become effective when the people vote against the same, and when said law is declined by the vote of the people. That by reason of this, the statute controlling the matter is invalid and void.

"Plaintiffs further show to the court that the defendants have threatened, and are now threatening, that in the event the plaintiffs and said other citizens over Henderson county fail to comply with said demands and threats the defendants will then call out the peace officers, and in connection with the defendants forcibly enter the peaceable premises of plaintiffs and said other citizens, and take from their possession their milch cows and other live stock and drive them to said dipping vat, and then by force and without the consent of the owners of said live stock that they will dip said cows and live stock again and as often as they see proper, and the defendants have stated and represented to these petitioners and to said other citizens that unless such demands are complied with they will cause the plaintiffs and said other citizens to be reported and to be arrested and fined in the courts, and plaintiffs represent that unless the defendants are restrained they will enter the premises of plaintiffs and said other citizens in connection with some peace officer selected by them, and in connection with said peace officer that the defendants will drive said live stock to said dipping vat, and will cause them to jump, fall, and plunge into said poison, and will cause valuable live stock belonging to said plaintiffs and other citizens to be injured, damaged, and crippled in said vats, and will cause said live stock to inhale and swallow said poison, and will cause the milk of said milch cows to be decreased in quantity one-half, as aforesaid, and the loss of butter in proportion, and will cause valuable live stock of plaintiffs and other citizens to be made sick, stiff, and helpless, and will cause them to die, all to the great damage of petitioners and to said other citizens of Henderson county, Tex.

"Plaintiffs allege that said forcible dipping of the milch cows of the plaintiffs and said other citizens has decreased the amount of milk and butter they would have realized from them to the extent of one-half, and even more below the normal amount, and that this is a serious damage to them and to their families; and that in the forcible dipping of the milch cows of A. A. Darden, said cows were cut and injured and rendered sick and almost helpless. That a cow of the plaintiff Frank McLeon was killed, and that an unborn calf, belonging to the plaintiffs Coy Elledge and J. V. Hornsby was killed, and the cows rendered sick and stiff, and their bags and teats were torn, injured and poisoned, and one of his calves crippled. That the milch cows of the plaintiffs J. L. Guthrie and T. B. Elledge were injured, damaged, and made sick, and their bags and teats injured and torn, and were rendered so painful and swollen that he had to tie his milch cows in order to draw milk from them. J. K. Derden lost the breeding of two cows, and one lost her milk.

"That a cow of plaintiff Joe Parker was killed by said dipping and poison. That the cows of the plaintiff Ellis Williams were rendered sick and weak on account of said dipping and poison. J. P. McKey lost one yearling.

"That the cows of the plaintiff Sebe Tindel were injured and damaged; their bags and teats cracked, torn, and blistered. That they

suffered so much pain from the inflictions of said injuries that he had to tie his cows in order to forcibly withdraw the milk from their bags.

"That all of the plaintiffs had cattle that lost in their milk and were damaged by reason of said dipping, and were seriously injured and rendered sick by said dipping and poisons, and their milk made bloodshot and unfit for use, and compelling the plaintiffs and their families to do without milk for a number of days, although they had been realizing enough theretofore for their own consumption, in addition to a sufficient amount to sell a number of customers.

"That all of said cattle were practically dried up in their milk. That cattle of other citizens living in Henderson county were also dried up in their milk and injured, that are not plaintiffs herein. That there is attached hereto a list of cattle damaged and marked 'Exhibit A.'

"That the following parties did not submit their live stock to said forcible dipping in the said vats, because they say that they know that valuable cows and cattle of their neighbors and of numerous citizens over Henderson county had been seriously injured and damaged, and in many instances killed, and they say that their own live stock had not been inspected by any inspector, and that no condition existed in law and in fact that required them to submit to the injury or destruction of their property, and consequently they have escaped damages by reason of the fact that they have not complied with said unlawful demands. Brooks Rodgers had one horse killed; Roll McClur had one cow killed; Jim Barton one calf killed; Bill Foster had one cow killed.

"Plaintiffs charge and respectfully represent to the court that the defendants, emboldened by their past conduct and misled by a misconception of their official power and authority, are now actually notifying these plaintiffs and other citizens of Henderson county that all of their horses and mules and cattle must be dipped in said dipping vats in like manner with the cattle that have heretofore been dipped, and yet plaintiffs say that their horses and mules are in a healthy condition, and are not affected or suffering from any disease of any kind or character whatever, all of which is well known to the defendants, or could have been known by them had they used proper legal diligence. Said horses and mules are not infected with glanders or anthrax or any other disease, and yet, notwithstanding the fact that no condition exists either in law and in fact that would warrant the defendants in compelling the dipping of said horses and mules, yet they have made said demand without even an inspection or examination of any kind whatever.

"Plaintiffs say that if the defendants are permitted to carry out such unlawful threats and proposals that valuable mules and horses of these plaintiffs, and of hundreds of other law-abiding citizens of Henderson county will be forcibly driven to the said dipping vats and will be injured, damaged, and crippled, causing each of the plaintiffs and other citizens to suffer thousands of dollars of damage, as they have been made to suffer with respect to their cattle, the forcibly driving and dipping of the said cattle, horses, and mules into said vats would not only injure and cripple them, but would be practically useless afterwards for any purpose whatever.

"Plaintiffs respectfully represent to the court that the trespasses and injuries above described were without authority of law, and that there is no valid statute in this state that would warrant the infliction of such injuries, and that, even if the Legislature had attempted, or were to attempt, to authorize such invasion of personal rights, such a statute would be in violation of the Constitution of this state, and they here now allege that said injuries were inflicted, not only without a warrant of a law, but in violation thereof.

"Plaintiffs further show to the court that there is no such law in-force in Henderson county, Tex., to-day, and has never been, that authorized or permitted the forcibly dipping of said live stock, or that authorized or permitted the infliction of said injuries. They here and now distinctly allege that the act of the Legislature under which the defendants claim to have action and to be acting now would not have justified such trespasses, injuries, and damage, even though it had been adopted in Henderson county, Tex., but the plaintiffs say that it has never been adopted by the voters of Henderson county, Tex., and has no application whatever with reference to the dipping of said cattle in said vats, or with reference to tick eradication under the supervision of local authorities.

"Plaintiffs represent the statute under which the defendants claim to be acting while making provisions for the payment of salaries of said inspectors, who are the defendants in this suit, plaintiffs are informed and believe, and upon said belief so represent the fact to be, that the defendants are receiving out of the funds of Henderson county, Tex., a salary each of $85 per month, except the defendant McManus, who is receiving a large salary out of the state government, yet said statute makes no provision for the payment of damages sustained by the citizen for his live stock injured or killed on account of said inspection, and on account of the forcible dipping of their live stock in the poisons placed in said vats by these defendants, and they are informed and believe, and upon such information and belief represent, that said inspectors are under no bond for the payment of the damages they inflict upon the citizens, and that no publication has been made officially in any newspaper of Henderson county, Tex., of any quarantine notice, quarantining the premises of any of these plaintiffs, or of said other citizens whom they represent. That there are a number of newspapers published in said Henderson county.

"Plaintiffs charge that said defendants are seeking to compel plaintiffs and many other citizens of Henderson county to submit to the dipping of their cattle, horses, and mules this week, and at frequent intervals in the future, and are threatening, in the event said demands are not complied with, to invade the premises of plaintiffs and said citizens and forcibly take away their milch cows and calves and their horses and mules and drive them to the said vats filled with said poisonous liquids immediately, and are threatening that unless the plaintiffs and other citizens comply with

said demands that they will be arrested, prosecuted, and fined in the courts, and plaintiffs allege that unless the court restrains such unlawful trespass and wrong that said injuries will be inflicted, and plaintiffs and other citizens whom they represent will each be compelled to suffer thousands of dollars of damages in the next few weeks, and they now come representing themselves and said citizens upon the facts and allegations in this petition, and pray· that this court issue its most gracious writ of injunction, restraining these defendants and all others from forcibly dipping or injuring their live stock (which are not affected with. any fever, or fever-producing ticks), and restraining them and all others from invading the premises of plaintiffs for said unauthorized and unlawful purposes, and that the court grant such other and further relief in law and equity as the plaintiffs may show themselves entitled to.

"Premises considered, plaintiffs pray that the defendants be restrained from further interfering with these plaintiffs' live stock, and from serving notice on these plaintiffs to dip their live stock, and from filing complaints in the court against these plaintiffs for refusing to dip their said live stock or prosecuting them in the courts, and that the defedants be restrained from further interfering with these plaintiffs in any manner whatever, or with their said live stock; and that they be prohibited or enjoined from requiring these plaintiffs to dip their said live stock, or from testifying in the courts against these plaintiffs in connection with said cases, or from disturbing these plaintiffs in any manner in the court or out of the court or their live stock for general and special relief; and that the court authorize the district clerk of Henderson county to issue a writ or writs of injunction in connection with this plea; and that the sheriff of Henderson county be permitted to serve such writ of injunction, requiring the defendants to comply to the prayer herein made."

A general demurrer was leveled at said ·petition, and the same sustained by the court, to which plaintiffs excepted, and gave notice of appeal.

The first assignment of error is:

"The petition in this case shows that the plaintiffs' cattle were bruised, skinned, blistered, caused to decrease in milk, crippled, killed, and suffered other damages; and that they were dipped in vats that were not prepared properly; and that they were dipped in a solution that was poisonous, and that a great many of the cattle were free from the tick fever, ticks, and other diseases. The same being true, the court committed an error in sustaining the defendants' .demurrer to the plaintiffs'. petition and in dismissing the suit."

The proposition presented by plaintiffs under this assignment is:

"When the pleadings show a case, such as described in the plaintiffs' petition, it is the duty of the court to hear the testimony but in this instance the court, after hearing the petition read, sustained a general demurrer to the petition, plaintiffs declining to amend, the court dismissed the case."

There was no testimony presented to the court, so none was heard. The general demurrer was sustained, and, plaintiffs declining to amend, the case was dismissed.

The appellees have not furnished this court with a brief upholding the action of the trial ' court, and appellants have cited but one decision in point, which is Castleman v. Rainey, 211 S. W. 630. In that case the plaintiffs' petition was practically the same as the one here presented, and it was there held to be good against a general demurrer. Said case is here cited in support of our views in this case.

The judgment in' this case is reversed, and cause remanded for a new trial, and the lower court is instructed to hear the testimony, and render judgment accordingly.

Reversed and remanded.